*In re* JOHN M. VITALE, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, *v.* JOHN M. VITALE, Respondent-Appellee.)

First District (3rd Division)    No. 62870

Opinion filed December 30, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Lawrence G. Dirksen, of Olympia Fields, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Respondent, John Vitale, was charged, tried and convicted by the circuit court of Cook County, in South Holland, Illinois, of the offense of failing to reduce speed to avoid an accident, in violation of section 11—601 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601.) Subsequently, a petition for adjudication of respondent's wardship was filed in the juvenile division of the circuit court of Cook County, alleging that respondent was delinquent because he committed involuntary manslaughter arising from his reckless misconduct in the operation of a motor vehicle which resulted in the deaths of two children. Respondent moved for discharge of the juvenile petition, arguing that the latter prosecution was barred by both the constitutional rules against double jeopardy and the statutory provisions contained in section 3—4 of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 3—4.) The circuit court dismissed the juvenile petition, and the State appeals.

We affirm.

The pleadings disclose the following pertinent facts. On November 20, 1974, the car respondent was operating struck two small children; one child died almost immediately and the other died the next day. The investigating officer of the South Holland Police Department issued a traffic complaint and summons to respondent, charging him with failing to reduce speed to avoid an accident. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601.) The traffic case was heard at a bench trial on December 23, 1974. Vitale pleaded not guilty, was found guilty, and a fine was assessed against him. The records from the traffic case, unfortunately, are not before us. On the next day, December 24, 1974, a petition for the adjudication of John Vitale's wardship was filed in the juvenile division of the circuit court of Cook County. The petition alleged that respondent was delinquent because he committed two offenses of involuntary

manslaughter on November 20 while recklessly driving a motor vehicle. The petition was signed by the same policeman who initiated the traffic proceeding. Respondent subsequently moved for discharge of the juvenile petition because he had already been tried for an offense arising from the November 20 incident, so that the latter prosecution was barred by sections 3—3 and 3—4 of the Criminal Code. Ill. Rev. Stat. 1973, ch. 38, pars. 3—3 and 3—4.

Section 3—3 of the Criminal Code states:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately."

Section 3—4 provides the effect of a failure to comply with section 3—3:

"(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, * * * if such former prosecution:

(1) * * * was for an offense with which the defendant should have been charged on the former prosecution, as provided in subsection 3—3 of this Code (unless the court ordered a separate trial of such charge) * * *." Ill. Rev. Stat. 1973, ch. 38, pars. 3—3 and 3—4.

This appeal presents three questions under section 3—3: (1) Whether the offense of failing to reduce speed to avoid an accident was based on the same act as the offenses of involuntary manslaughter; (2) Whether the traffic offense and the involuntary manslaughter offenses were within the jurisdiction of a single court; and (3) Whether the involuntary manslaughter offenses were known to the proper prosecuting officer when the traffic charge was prosecuted.

The first issue is whether the traffic offense for which respondent was convicted in traffic court, failing to reduce speed to avoid an accident (hereinafter FTRS), arose from the same act as the involuntary manslaughter offenses. The State argues that the offense of FTRS is not a lesser included offense of involuntary manslaughter, and that the offenses are separate and distinct in law and fact. The respondent argues that the traffic offense is a lesser included offense of involuntary manslaughter, and all the offenses arose from and are based on the same act.

The offense of involuntary manslaughter is defined as follows:

"(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.

(b) If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide.

(c) Sentence.

(1) Involuntary manslaughter is a Class 3 felony.

(2) Reckless homicide is a Class 4 felony." (Ill. Rev. Stat. 1973, ch. 38, par. 9—3.)

Under the statute in effect at the time of the conduct in question, reckless homicide was a lesser included offense of involuntary manslaughter. (*People v. Gibson* (1976), 41 Ill. App. 3d 209, 354 N.E.2d 71.) Because reckless homicide and FTRS have the same common denominator, the use of a motor vehicle, we shall compare these offenses to determine whether FTRS and reckless homicide, and therefore involuntary manslaughter, are based upon the same act.

■■ The elements of reckless homicide are: (1) that the defendant caused the victim's death by driving a motor vehicle; (2) that the defendant drove the motor vehicle recklessly; and (3) that the defendant drove the motor vehicle in a manner likely to cause death or great bodily harm. (Illinois Pattern Jury Instructions, Criminal, No. 7.10.) Although not stated in as many words, a collision with a person or property is an element of proof because the death in such a case would always result from such a collision. As was stated in *People v. Crego* (1946), 395 Ill. 451, 461-62:

"Before a verdict of guilty in an automobile manslaughter case can be sustained the proof must disclose that defendant knew of the danger of collision and recklessly, * * * ran down and collided with the deceased without using such means as were reasonable and at his command to prevent the accident."

The offense of failing to reduce speed to avoid an accident is set forth in section 11—601(a) of the Illinois Vehicle Code:

"(a) No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does

not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. *Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."* (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601(a).)

The first element is that the defendant, while driving a motor vehicle, collided with a person or vehicle. The second element of the offense as written is that the defendant drove the motor vehicle in a manner which was in violation of his duty to exercise due care. The final element is that the collision was caused by defendant's failure to reduce his vehicle's speed in violation of his duty of due care. The penalty provision is that the first and second convictions for this offense are Class C misdemeanors (Ill. Rev. Stat. 1973, ch. 95½, par. 16—104), punishable by not more than 30 days imprisonment (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—3(a)(3)), and a fine not to exceed $500. Ill. Rev. Stat. 1973, ch. 38, par. 1005—9—1(a)(3).

■■■ The State argues that the respondent's act of FTRS causing a collision with two persons was independent of and had no necessary or consequential relationship with the acts which would constitute respondent's culpability of the offense of involuntary manslaughter. We believe that the appropriate law is contained within our Criminal Code, which defines "act" to include "a failure or omission to take action," and defines "conduct" as "an act or a series of acts and the accompanying mental state." (Ill. Rev. Stat. 1973, ch. 38, pars. 2—2 and 2—4.) As applied to the instant facts, these definitions lead us to the following conclusions. The *conduct* constituting the offense of involuntary manslaughter with a motor vehicle, or reckless homicide, is the *act* of driving a motor vehicle in a manner likely to cause a collision resulting in death, with the resulting collision and death, accompanied by the mental state of recklessness. The act constituting the offense of FTRS is the *act* of driving a motor vehicle and *failing* to reduce its speed to avoid a collision, with such failure resulting in a collision. Since an act includes a failure or omission, the offense of FTRS is the *act* of driving a motor vehicle in a manner likely to cause a collision, with such act resulting in a collision. Comparing the acts in both offenses, the major difference is in the death required for involuntary manslaughter. The basic acts of both offenses are identical.

We hold that the attempted prosecution herein for the two offenses of involuntary manslaughter was based upon the same act as the former prosecution for the offense of failing to reduce speed.

■■ The second issue arising under section 3—3 is whether the traffic offense of FTRS and the involuntary manslaughter offenses were within the jurisdiction of a single court. The juvenile court has original and exclusive jurisdiction over a minor who is delinquent by reason of the violation of "any federal or state law or municipal ordinance" (Ill. Rev. Stat. 1973, ch. 37, par. 702—2; *In re Rahn* (1974), 59 Ill. 2d 302, 319 N.E.2d 787), except that a minor alleged to have committed a traffic offense may be prosecuted therefor without reference to the procedures of the Juvenile Court Act. (Ill. Rev. Stat. 1973, ch. 37, par. 702—7(2).) In the case at bar, jurisdiction over the minor for commission of the traffic offense of FTRS was properly exercised by the circuit court sitting in South Holland without regard for the requirements of the Juvenile Court Act, although the juvenile court also had jurisdiction over the minor for the same offense. The offenses of FTRS and involuntary manslaughter were all within the jurisdiction of a single court, the juvenile division of the circuit court of Cook County.

The third issue is whether the involuntary manslaughter offenses were known to the proper prosecuting officer when the traffic charge was prosecuted. At the June 9, 1975, hearing on respondent's motion, the trial court specifically asked the two assistant State's Attorneys in court whether the manslaughter charges were known to the State's Attorney's office when the traffic offense was heard on December 23, 1974. In response to this question, one prosecutor said that she could not supply the requested information at that moment. The record is silent as to whether a prosecutor was in attendance at the December 23 trial. Furthermore, the prosecution does not deny being in attendance and having knowledge of the manslaughter offenses. We would note that the respondent first claimed his rights under sections 3—3 and 3—4 on February 27, 1975 (Ill. Rev. Stat. 1973, ch. 37, par. 701—2(3)(a)), and that the State filed two responses, on April 4 and May 5. Neither response denied such attendance and knowledge.

The State argues that although the investigating police officer knew of the deaths as they occurred, one death immediately after the collision and the other a day later, such knowledge should not be attributed to the office of the State's Attorney, citing *People v. Pohl* (1964), 47 Ill. App. 2d 232, 197 N.E.2d 759. In *Pohl*, it was held that the "proper prosecuting officer" means the State's Attorney and his assistants, not a police officer with actual knowledge of the facts. This holding was followed in *People v. Bressette* (1970), 124 Ill. App. 2d 469, 473, 259 N.E.2d 592, 594, where the court wrote:

"Defendant suggests that modern police procedures, coupled with the statutory duties of a state's attorney to investigate possible crimes and attend prosecutions in the now unified circuit court, require that we impute the knowledge of the arresting officer to the state's attorney. We do not preclude a case in which the denial by a state's attorney that he has such knowledge may not be accepted where evidence in the record fairly points to a contrary conclusion, but this is not that case.

 * * * the subsequent prosecution was not barred because the previous charge was unknown to the proper prosecuting officer * * *."

The State contends that we should not presume that the prosecution had knowledge of the manslaughter offenses.

■■ ■ The State's Attorney for each county has the duty to attend court proceedings to prosecute felony and misdemeanor charges. (Ill. Rev. Stat. 1973, ch. 14, par. 5.) "There is a presumption that the State's attorney performs the functions of his office according to the law and that he does his duty, which is a presumption regarding all officers but is not conclusive." (*People ex rel. Hoyne v. Newcomer* (1918), 284 Ill. 315, 324.) A State's Attorney may rebut this presumption by denying that he was present to perform his official duties. In the absence of a denial, however, it must be presumed that he performed his statutory functions. In the context of the case at bar, it is presumed that an assistant State's Attorney attended respondent's trial on December 23 for FTRS, and that the prosecutor had full knowledge of the pertinent facts of the offense. The investigating officer's report states that two children died after being hit by respondent's vehicle. We believe and hold that in the context of this case, in the absence of a denial, the proper prosecuting officer is presumed to have had knowledge of the involuntary manslaughter offenses when the traffic offense was prosecuted. We would comment that in both *Pohl* and *Bressette*, the respective proper prosecuting officers actively denied knowledge of the other offenses, unlike the prosecutors in the instant case.

■■ Since the requirements of section 3—3(b) were satisfied inasmuch as the offenses of involuntary manslaughter were known to the proper prosecuting officer at the time the prosecution for FTRS was commenced, were based upon the same act of driving in a manner likely to cause a collision as the offense of FTRS, and were within the jurisdiction of the juvenile division of the circuit court of Cook County, the trial court properly held that the later prosecution for involuntary manslaughter in the form of a petition for adjudication of wardship was barred by section 3—4(b)(1).

For the abovementioned reasons, the order of the circuit court of Cook

County granting respondent's motion for discharge of the juvenile petition for adjudication of wardship is affirmed.

Order affirmed.

McNAMARA, P. J., and MEJDA, J., concur.