THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAVADA LEON WOOLLUMS, Defendant-Appellant.

Fourth District   No. 14816

Opinion filed August 25, 1978.

Michael B. Metnick, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy, for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Following a jury verdict of guilty in the circuit court of Adams County, defendant Lavada Leon Woollums was sentenced to imprisonment for 3 years 4 months to 10 years for the offense of aggravated battery. He appeals both the conviction and the sentence. We affirm.

The factual background and the chronology of events are out of the ordinary. A Quincy attorney, upon leaving his law office late in the evening hours of September 4, 1973, discovered defendant tampering with his automobile. He returned to his office where he knew several Quincy police officers were conferring with one of his partners. The lawyer and the officers returned to the car. One of the officers, Rost by name, inquired of the defendant concerning his actions. Defendant claimed the car belonged to his brother-in-law whose name Officer Rost requested. Looking at the car registration which he had just obtained from the glove box of the car, defendant gave the name of the lawyer. Rost riposted that this was unusual because the registered owner, *i.e.*, the lawyer, was at this moment standing beside him.

Defendant, apparently concluding that flight would be more fruitful than logic under the circumstances, hit Rost behind the ear and took to his heels with Rost in pursuit. A short distance away defendant lost his footing and while lying on the ground kicked Rost on the right leg. He was subdued by Rost and the other officers.

The next day Rost had a large bruise on the inner aspect of his thigh, a black-and-blue ear, a bruise on the back of his neck, a cut on his nose and a mark around his eye where his glasses were broken in the scuffle with defendant. He did not require medical treatment.

As a result of this encounter, defendant was charged with two Quincy ordinance violations: "Intoxication" and "Interfering with an Officer." The charges were made out on a Uniform Illinois Citation and Complaint Form with the box checked requiring a mandatory court appearance under the Supreme Court Rule then in effect, Rule 551(f) (50 Ill. 2d R. 551(f)). Defendant did not sign the portion of the form waiving trial and consenting to an *ex parte* judgment as further provided in Rule 556(b) (50 Ill. 2d R. 556(b)).

On the following day, September 5, 1973, defendant appeared in court, posted $100 cash bail and a trial date of September 26, 1973, was set. Defendant was then released on bond. On the trial date defendant failed to appear and the court entered the following order:

> "Defendant called three times; fails to appear and is found to be in default. *Ex parte* judgment entered herein against the Defendant in

the amount of $100.00. It is therefore ordered that the Defendant's cash bond heretofore posted by Defendant shall be applied in satisfaction of the judgment rendered herein."

There ensued an hiatus of 18 months and seven days. On April 2, 1975, defendant was indicted for aggravated battery in that he intentionally and knowingly, without legal justification, caused bodily harm to an individual when he knew the individual harmed to be a peace officer and where the officer was engaged in the execution of his official duties. Ill. Rev. Stat. 1971, ch. 38, par. 12—4(b)(6).

Again there intervened an hiatus of more than 2½ years. A jury trial on the indictment commenced on November 21, 1977, with the resultant verdict of guilty and on December 30, 1977, defendant was sentenced as above described. This appeal followed on January 5, 1978.

Defendant raises five issues on appeal: (1) Double jeopardy under the provisions of the United States and Illinois constitutions, under the provisions of the Illinois Criminal Code and under due process principles; (2) restriction of cross-examination; (3) failure to prove that the officer was "harmed" within the meaning of the statute; (4) application of the Sentencing Act of 1977; and (5) abuse of discretion by the trial court in imposing the maximum sentence.

In order to succeed with the double jeopardy argument defendant must establish that multiple punishments were imposed for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072; *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797.) This requires a close analysis of the action of the trial court in entering the order of September 26, 1973; not only what was actually done, but also the legal import of that order.

The action must be viewed in the light of the governing rule and statute. The Rule is 556(c) (50 Ill. 2d R. 556(c)) which read as follows:

"If a defendant fails to appear on the date set for appearance, or any date to which the case may be continued, and a court appearance is required under Rule 551, bail or security shall be forfeited and the judge may order the filing of a verified complaint and issue a summons or warrant of arrest for the defendant."

Section 110—8(g) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 110—8(g)) read as follows:

"If the accused does not comply with the conditions of the bail bond the court having jurisdiction shall enter an order declaring the bail to be forfeited. Notice of such order of forfeiture shall be mailed forthwith by the clerk of the court to the accused and his sureties at their last known address. If the accused does not appear and surrender to the court having jurisdiction within 30 days from

the date of the forfeiture or within such period satisfy the court that appearance and surrender by the accused is impossible and without his fault the court shall enter judgment for the State against the accused and his sureties for the amount of the bail and costs of the proceedings."

■■ While the language of the court's order is not couched precisely in the words of the rule and statute, its meaning is obvious. The bail was forfeited, but the court did not order a verified complaint and warrant. The proceedings stopped short of prosecution. The court was premature in entering a judgment, since under the statute 30 days must elapse from the forfeiture to the judgment, but the purported entry of judgment only reinforces what was the evident intent of the court: a civil judgment on the bond in lieu of criminal prosecution.

The nature of bail forfeiture was clearly explained by our predecessors on this bench in *People v. Brown* (1962), 35 Ill. App. 2d 182, 186, 182 N.E.2d 347, 350, where the court said:

"A forfeiture is a judgment, effective as of the term taken and entered of record. It is not a determination of the amount due under a bond, but is rather an adjudication that accused stood charged with a public offense, that he obtained his release under bond, that the bond was executed in the particular case, and that some condition of such bond was broken."

In *People v. Canaccini* (1977), 52 Ill. App. 3d 811, 368 N.E.2d 133, the court held that bail forfeiture orders were governed by the Civil Practice Act, and in *United States v. Barger* (9th Cir. 1972), 458 F.2d 396, the court said:

"A bail bond in a criminal action is a form of contract between the government on the one part and the accused and the surety on the other. Such bonds are conditioned upon the presence of the accused at specified times during the criminal proceedings and provide a monetary penalty upon condition broken. This penalty is one for damages and is deemed civil, not criminal, in nature."

We also find the Committee Comments to section 110—8(g) instructive:

"In traffic cases, or others, where the practice is for the accused to post cash bail and then forfeit in lieu of trial, this practice may be continued under section 110—8. Of course, it should be realized that the forfeiture of bail does not release the accused from prosecution if the state or city desires to prosecute, but that has always been the law and section 110—8 constitutes no change in that regard. In practice it is usually cheaper for the state, or city, in traffic cases and other minor offenses in which a fine would probably be imposed as punishment, to accept the bail forfeiture in lieu of the fine which would probably be imposed and not go to

the expense (which would be borne by the taxpayers) of bringing every traffic violator and minor offender into court for a full-blown trial." Ill. Ann. Stat., ch. 38, par. 110—8(g), at 322 (Smith-Hurd 1970).

■■ We are thus led to the ineluctable conclusion that whatever the specific language of the trial court was on September 26, 1973, the defendant suffered only a money penalty for damages for nonappearance, not punishment, for hitting the police officer, and therefore the first element of the two-pronged constitutional test, multiple punishments—same offense, has not been met.

Nor do we find the second element, same offense, has been met. Under both the Federal and Illinois constitutions, the test is whether each offense requires proof of a fact which the other does not. *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180; *People v. Flaherty* (1947), 396 Ill. 304, 71 N.E.2d 779.

The significant portion of the Quincy ordinance is as follows:

"It shall be unlawful to interfere with or hinder any officer or employee of the city while engaged in the duties of his office."

The crux of the aggravated battery charge was bodily harm to an individual knowing the individual was a peace officer engaged in the execution of his official duties.

Viewed in the abstract, the offenses require different elements of proof. Aggravated battery requires bodily harm which the ordinance does not. The ordinance requires interference which is a much broader concept than bodily harm. Interference can be accomplished without any physical contact whatever. Furthermore, the ordinance requires proof that the person interfered with was a city officer or employee, while the statute is much broader. A peace officer could be an employee of either Federal, State or local governmental units of any variety.

In the instant case the interference was accomplished and completed when defendant lied to Rost about the ownership of the automobile. The lie interfered with Rost's official duty in investigating a citizen's complaint. The aggravated battery was accomplished and completed when defendant struck Rost. Compare *People v. Picha* (1976), 44 Ill. App. 3d 759, 358 N.E.2d 937, where the Fifth District Appellate Court held resisting arrest and battery constituted different offenses and required different elements of proof.

Defendant next contends that the statutory provisions concerning multiple prosecutions is a bar to the aggravated battery charge. The pertinent provisions are found in sections 3—3(a), (b) and 3—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 3—3(a)(b), 3—4(b)(1), and read as follows:

"(a) When the same conduct of a defendant may establish the

commission of more than one offense, the defendant may be prosecuted for each offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

\* \* \*

(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if such former prosecution: \* \* \* was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3—3 of this Code\* \* \*."

■■ We note first that there must be a single prosecution if the offenses are based on the same "act." The supreme court has recently held in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, that act means "any overt or outward manifestation which will support a different offense." Regardless of whether the offenses were based on the same act, section 3—4(b)(1) speaks of the "former prosecution," and we have already held that there was no "prosecution" for the ordinance violations and therefore the statute can have no application. In this sense, the instant case differs radically from *In re Vitale* (1976), 44 Ill. App. 3d 1030, 358 N.E.2d 1288, *aff'd* (1978), 71 Ill. 2d 229, 375 N.E.2d 87, which is relied on by the defendant. There a prosecution for a traffic offense had been completed and was held to be a bar to a later juvenile charge.

■■ Defendant's third contention on jeopardy is a general due process argument, emphasizing the delay in prosecution. The aggravated battery charge was brought well within the statute of limitations and defendant has made no showing as to how he was prejudiced by the delay. *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.

Defendant's second issue relates to cross-examination of Officer Rost. During this cross-examination defense counsel sought to show that Rost made no mention of injury to himself and charged defendant with only an ordinance violation. The trial court sustained objection to this line of questioning, ruling that it was immaterial and irrelevant.

Defendant argues that Rost's decision to charge the ordinance violation constituted an "implied admission" inconsistent with his trial testimony that he was injured.

While a police officer has a considerable latitude in charging an individual, the ultimate responsibility of filing a charge and prosecuting it lies with the State's Attorney. (Ill. Rev. Stat. 1973, ch. 14, par. 5.) Thus, the

actions of the police officer in the first instance yield to the judgment and discretion of the constitutional officer empowered to take final action.

■■ A trial court is vested with wide discretion in the control of cross-examination. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627.) We find no abuse of discretion in this instance, especially since defense counsel did elicit testimony that no medical treatment was sought and no mention of injury was made in Rost's report, although he stated in the report that he was struck. This information was before the jury; what charge the officer made at the time of the incident was irrelevant to the question of bodily harm.

■■ Defendant's third issue derives somewhat from the second. He argues that there was no proof beyond a reasonable doubt that Rost suffered "bodily harm." We acknowledge a split of authority between appellate districts on this subject. (Compare *People v. Meints* (1976), 41 Ill. App. 3d 215, 355 N.E.2d 125, and *People v. Benhoff* (1977), 51 Ill. App. 3d 651, 366 N.E.2d 359.) There is no necessity for us to enter into this disagreement since under either doctrine, *Meints* or *Benhoff*, Rost was harmed. The evidence was that he suffered three bruises and a cut. It was a jury question whether these constituted bodily harm beyond a reasonable doubt. The jury resolved the question adversely to defendant and we perceive no basis to upset their finding.

Defendant makes the further argument that since Rost did not testify as to any pain, he was not harmed. This would equate "pain" with "harm" and would be an unwarranted interpolation of the statute.

■■ Defendant's fourth issue relates to defendant's contention of his right to be sentenced under the Illinois sentencing act of 1977 (P.A. 80-1099), now part of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 1001—1—1 *et seq.*). Section 8—2—4(b), as amended by P.A. 80-1099, provides that one sentenced prior to February 1, 1978, shall not have the right to elect to be sentenced under the Act of 1977. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b).) The supreme court has recently held this provision to be constitutional in *People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4, and that case is dispositive of the issue adversely to defendant.

■■ Defendant's fifth and final issue relates to what he deems severity of punishment by the trial court's imposition of the maximum sentence. To support his argument he cites a potpourri of aggravated battery cases in which appellate courts have modified sentences, none of which we find persuasive. Attacking a police officer is a serious offense even though serious injuries do not result. The seriousness lies in the vicious and depraved attempt to corrupt public order and safety. The supreme court

in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, has stated emphatically that sentencing is primarily the function of the trial court and its decision is not to be lightly regarded. The record reveals that defendant has had a long history of criminal entanglements, including conviction of two prior burglaries.

In light of the nature of the offense and the prior record, the trial court did not abuse its discretion in the sentence it imposed.

Defendant's conviction and sentence are affirmed.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.